IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

UNITED STATES OF AMERICA )
)
v. )
)
HUNG THIEN LY, ) CASE NO. CR407-286
)
Defendant. )
)

# O R D E R

Before the Court are Defendant Hung Thien Ly's "Motion to Release Portion of Seized Funds to Retain Counsel of His Choice"[1] (Doc. 25) and Motion for Extension of Time to File Pretrial Motions (Doc. 30). In his motions, Defendant asks the Court to order a release of $130,000 of the $185,080 seized by the Government in this case. He also asks for a 30-day extension of time, after resolution of the Motion to Release Seized Funds, in which to file pretrial motions. For the following reasons, the Motion to Release Funds is **DENIED**, and the Motion for Extension of Time is **GRANTED**.

## BACKGROUND

Defendant Ly was a physician maintaining offices in Pooler, Georgia. The investigation in this case was

---

[1] The full title of this document is "Defendant's Pro Se Motion to Release Portion of Seized Funds to Retain Counsel of His Choice or to Seek Appointment of Legal Counsel." The Court previously issued a ruling on Defendant's request to obtain appointed counsel and does not intend to revisit that ruling.

initiated as a result of numerous complaints received by the Chatham-Savannah Counter Narcotics Team and the Georgia Drug and Narcotics Agency from pharmacists and family members of Dr. Ly's patients. The complaints concerned prescription drug abuse and Dr. Ly's alleged over-prescribing of pain medication.

According to a confidential source who made nine undercover visits to Defendant's office and an undercover agent who made two official visits, Defendant operated his business on a "cash only" basis. Also according to these sources, Defendant was the only person in the office and he did not physically examine his patients.

Investigation also revealed that Defendant purchased large quantities of controlled substances so that he could fill his patients' prescriptions himself. (Catano Aff. at 9.) For example, the Drug Enforcement Agency's database shows that Dr. Ly was supplied with the following quantities of hydrocodone: 74,500 dosage units for 2004, 146,000 dosage units for 2005, and 17,000 dosage units in January 2006.

In her affidavit, DEA Drug Investigator Jo Ann Calano explains the reasons for requesting permission to search safes or other containers which might contain cash:

> Dr. Ly's medical practice operated on a "cash only" basis. Based upon the quantities of controlled substances ordered by Dr. Ly . . . , Dr. Ly's dispensation of this large quantity of controlled substances to individual patients paying in cash would have generated large amounts of cash. A review of statements of Dr. Ly's known personal and business bank accounts . . . did not reveal large amounts of cash deposits.

(Gov't Exs. A & B). Based upon this affidavit, the federal search warrant was generated.

On March 30, 2006, pursuant to the federal search warrant, the Government seized $180,000 from a metal safe located in the attic above Defendant's residence. The Government also seized $5,080 hidden in a container in the master bedroom of the residence.

The Government initiated civil forfeiture proceedings on October 10, 2006. The proceedings were stayed on October 17, 2007, pending outcome of the criminal indictment.

On September 12, 2007, Defendant was indicted on 129 counts of dispensation of controlled substances in violation of 21 U.S.C. § 841(a)(1). Magistrate Judge G.R. Smith denied Defendant's Motion to Appoint Counsel, and this Court affirmed that decision on November 16, 2007. On January 11, 2008, Defendant filed the instant Motion to Release Seized Funds, claiming that a failure to release a

portion of the funds would interfere with his Sixth Amendment right to counsel of his choice.

In an Order dated February 8, 2008, the Court requested that the Government provide a detailed explanation of the basis for the seizure, including an explanation of the connection between the funds and the offenses charged in the indictment. On February 22, 2008, the Government complied with the Court's request.

**ANALYSIS**

In cases where the government has legitimately seized a defendant's potentially forfeitable funds, courts have held that the defendant has no automatic right to a release of such funds, even when he intends to use them to procure the counsel of his choosing. See, e.g., United States v. Monsanto, 491 U.S. 600, 614, 109 S. Ct. 2657, 105 L. Ed. 2d 512 (1989); United States v. Phillips, 434 F.3d 913, 915 (7th Cir. 2006)(explaining that the defendant "ha[d] a right to counsel, but not a right to the release of funds to obtain counsel of her choice"); United States v. Nichols, 841 F.2d 1485, 1509 (10th Cir. 1988); United States v. Real Prop. Located at Incline Village, 976 F. Supp. 1327, 1358 (D. Nev. 1997). As the Supreme Court explained:

> A defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that that defendant will be able to retain the attorney of his choice. A robbery suspect, for example, has no Sixth Amendment right to use funds he has stolen from a bank to retain an attorney to defend him if he is apprehended. The money, though in his possession, is not rightfully his; the Government does not violate the Sixth Amendment if it seizes the robbery proceeds and refuses to permit the defendant to use them to pay for his defense.

Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 626, 109 S. Ct. 2646, 105 L. Ed. 2d 528 (1989)(internal quotations and citations omitted). This rule "applies equally to criminal and civil forfeiture." Nichols, 841 F.2d at 509.

A showing of probable cause is generally sufficient to establish that the funds are subject to seizure (and therefore not available to pay for counsel of the defendant's choice). See, e.g., United States v. Bollin, 264 F.3d 391, 421 (4th Cir. 2001); Incline Village, 976 F. Supp. at 1358 ("[A] claimant may not insist on using assets as to which the government has established probable cause to declare forfeit to obtain counsel of choice.")

In this case, the Government has met its burden of showing probable cause for subjecting the funds to seizure. The Government has described numerous witnesses who attest

to the fact that Defendant ran a cash-only business. Furthermore, the twenty patient files recovered from Defendant's office and analyzed by expert Dr. Jordan were evidence that most, if not all, of Defendant's prescriptions were issued outside of the normal course of professional practice and for no legitimate medical purpose. (Gov't Ex. F.)

As the Government argues: "Multiply[ing] office visits times patient visits times cash collected by Defendant Ly for each visit and drugs dispensed would readily, over a multi-year period, generate a substantial cash hoard, well in excess of the $185,080.00 seized." (Gov't Resp. at 4-5.) Indeed, the Court specifically takes note of the cash-only nature of Defendant's business, the level of improper prescription revealed by Dr. Jordon's analysis of Defendant's patient files, the quantities of controlled substances obtained by Dr. Ly for dispensation to his patients, and the number of patients and patient visits. All of these facts combine to show that the $185,080 represents a low estimate of the allegedly illegal funds procured by Defendant.

Because the Government has met its burden of showing probable cause for seizure of the $185,080, Defendant's Motion for Release of Funds is **DENIED**. Defendant's Motion

for Extension of Time to File Pretrial Motions is **GRANTED,** and Defendant shall have **30 days** from the date of this Order in which to file pretrial motions. **The Court is not inclined to grant further extensions in this case.**

SO ORDERED this **17th** day of March, 2008.

                                            WILLIAM T. MOORE, JR., CHIEF JUDGE
                                            UNITED STATES DISTRICT COURT
                                            SOUTHERN DISTRICT OF GEORGIA